UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| CYPRESS CREEK EQUINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:22-cv-00095-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NORTH AMERICAN SPECIALITY | ) | **&** |
| INSURANCE CO., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on two Motions for Summary Judgment.  [R. 33; R. 36.]  Cypress Creek Equine held casualty insurance through North American Specialty Insurance (NAS).  Cypress seeks a court order requiring NAS to pay them for the untimely death of one of their horses, Laoban, who had an allergic reaction to a shot he was given to increase his interest in breeding.  NAS refuses to pay out, alleging that Cypress violated multiple provisions of their coverage contract, including the Unauthorized Medication Exclusion and the Proper Care Exclusion.  As a result, Cypress filed a Motion for Summary Judgment [R. 33] and NAS also filed a Motion for Summary Judgment [R. 36].  The Court finds there remains no genuine issues of material fact, so the Defendant's Motion for Summary Judgment **[R. 36]** is **GRANTED** and the Plaintiff's Motion for Summary Judgment **[R. 33]** is **DENIED.**

**I**

Cypress Creek Equine (Cypress), a limited liability company engaged in breeding and racing horses, owned a stallion named Laoban.  Cypress contracted with North American Specialty Insurance (NAS) to provide it with mortality insurance to cover Laoban's possible

death.  NAS insured Southern and Cypress' shares in Laoban between March 11, 2016, through his death.  The policy was most recently renewed in October 2020, where Southern's name was replaced in totality with Cypress' name.  In April 2021, Cypress replaced the October 2020 policy with the policy at issue here.  The policy was executed on April 12, 2021.  [R. 11-2 at 2.] In May 2021, Laoban died unexpectedly after being given vitamin and mineral supplements. Three months later, NAS notified Cypress by letter that it denied Cypress insurance coverage.

Consequently, Cypress filed this action seeking a declaratory judgment that Cypress is entitled to full mortality coverage from NAS.  NAS subsequently moved for a more definite statement and joinder of necessary party.  [R. 7.]  This Court denied both requests.  [R. 12.] Now, Cypress and NAS have filed two Motions for Summary Judgment.  [R. 33; R. 36.]  At bottom, NAS argues the contractual terms are not ambiguous, such that the ordinary meanings of the undefined words control and, as a result, Cypress is not entitled to coverage.  Conversely, Cypress argues that because they reasonably expected coverage, the contract must be read liberally in favor of the person who accepts it, such that Cypress is entitled to full coverage.  The Motions, having been fully briefed, are now ripe for review.

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. Oct. 21, 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

2

(1986)).  The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp.*, 477 U.S. at 325.  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute.  *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).  In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party.  *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).  Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe."  *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

## A

The first issue is whether the contract is ambiguous. Cypress argues that because they reasonably expected coverage, the contract must be read liberally in favor of the person who accepts it, rather than the person who drafts it.  *See B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 965-66 (Ky. App. 1951).  To apply the "reasonable expectation" doctrine, the policy contract must be ambiguous.  *See Ky. Employers' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 883 (Ky. 2015); *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 837 (Ky. 2005).

3

Cypress seems to explicitly acknowledge that the contract is unambiguous, which means the "reasonable expectation" doctrine clearly would not apply.  [R. 37 at 16.]

Nevertheless, assuming *arguendo*, that Cypress contends the policy is ambiguous, this is not the case.  Presumably the argument for ambiguity would be that because "drug," "medication," and "proper care" are not defined in the contract, those terms are ambiguous.  Just because a term is not defined, however, does not make the contract inherently ambiguous.  *See Alvey v. State Farm Fire and Casualty Company*, 361 F. Supp. 3d 703, 709 (W.D. Ky. Jan. 18, 2019) ("[T]he fact that the term 'material' is not defined by the policy, and that State Farm's corporate representative failed to properly define it, does not demonstrate ambiguity.")  Thus, the Court does not find the contract to be ambiguous and Cypress fails to provide additional reasoning for why the "reasonable expectation" doctrine should apply.

### B

The second issue is to determine how to define an undefined contractual term.  To determine the meaning of an undefined term, Kentucky law states that "when a court encounters a term that has not acquired specific definition through the law or through the contract itself, the court must determine the ordinary meaning of the term and resolve ambiguity, if any, in favor of the insured." *Alvey*, 361 F. Supp. at 710.  Because the contract is not ambiguous, the standard of "reasonable expectation" and "construction in favor of the insured" are inapplicable.  *See Kentucky Association of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 633 (Ky. 2005).  Further, because the Court cannot find that "drug," "medication," and "proper care" have a technical meaning, and neither party has provided evidence to the contrary, the ordinary meaning of the word controls.

4

**1**

The first exclusion in question is the Unauthorized Medication Exclusion.  The Unauthorized Medication Exclusion precludes coverage for loss resulting from "administration of drugs or medication . . . unless done by or under the direction of a veterinarian and certified by him/her to have been of a preventative nature or necessitated by accident, sickness or disease of the horse."  [R. 37 at 16.]  NAS contends that the vitamin shot is considered a "medication" or a "drug" [R. 36-1 at 20], but Cypress argues that the vitamin shot does not qualify under either of these definitions [R. 33-1 at 7].  "Medication" or "drug" is not defined in any of the policy documents.  *Id.*  NAS argues, and the Court agrees, that when a term is not defined and does not have a technical meaning, Kentucky law mandates the words be given their ordinary meaning.  *See Motorists Mutual Insurance Company v. RSJ, Inc.*, 926 S.W.2d 679, 680 (Ky. App. 1996).

NAS cites to Merriam Webster's online definition of "medicine" and "drug."  [R. 36-1 at 21 n.8.]  It defines "medicine" and "drug" as "'a substance recognized in an official pharmacopoeia or formulary,' 'a substance other than food intended to affect the structure or function of the body,' and 'a substance or preparation used in treating disease.'"  [R. 36-1 at 21 n.8.]  NAS makes it clear that the "Black Shot" in question can be considered either a medication or drug.  The "Black Shot" is a concoction of Vitamin C, Vitamin B12, and Vitamin B Complex, as well as Iron Hydrogenated Dextran.  [R. 36-1 at 20.]  These three vitamins and Iron Hydrogenated Dextran are all regulated by the FDA, and each has a National Drug Code.  [R. 36-1 at 20.]  Further, the three vitamins contain a warning label noting "Federal law restricts this *drug* to use by or on order of a licensed veterinarian."  [R. 36-13 at 1-11 (emphasis added)].

Under the ordinary meaning of both "medicine" and "drug," it appears that the "Black Shot" would squarely fall within either of these definitions.  NAS has the duty of defining the

terms in its own policy and the Plaintiff at this juncture is only required to provide a reasonable interpretation of what they think "drug" and "medicine" mean. *See Safeco Insurance Company of Illinois v. Armstrong*, No. 5:19-cv-270-JMH, 2020 WL 1666827, at *5 (E.D. Ky. April 3, 2020). The Plaintiff has not done so. Instead, they rest their argument on the fact that "medicine" and "drug" are undefined and that they reasonably expected coverage, both of which fail as the Court has already addressed. Accordingly, the Court will use the dictionary definitions of the words as is customary under Kentucky law. *See, e.g. Safeco Insurance Company of Illinois v. Armstrong*, No. 5:19-cv-270-JMH, 2020 WL 1666827, at *3 (W.D. Ky. April 3, 2020) (noting Kentucky courts frequently turn to dictionaries to determine the meaning of undefined contract terms); *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002). Under the dictionary definitions of the undefined terms, the Court finds that the "Black Shot" constituted a "drug" or "medicine."

The second part of the Unauthorized Medication Exclusion necessitates that an injection be "of a preventative nature or necessitated by accident, sickness, disease." [R. 36-1 at 6.] Based on Dr. Wharton's testimony, coupled with the fact the Plaintiff did not dispute this point, the Court finds the sole purpose of the shot was to increase Laoban's energy levels. [R. 33-6 at 13.] Because the Plaintiff gave Laoban a drug that was not preventative or necessitated, the Court finds that coverage was rightfully denied under the Unauthorized Medication Exclusion.

### 2

The second exclusion in question is the Proper Care Exclusion. The Proper Care Exclusion also precludes coverage for loss resulting from "failure to provide proper care and attention for the horse." [R. 37 at 19.] On one hand, Cypress advocates for a narrow definition of a "care" and "attention" to include only neglect, food, and shelter. [R. 33-1 at 7.] NAS, on

the other hand, contends that the ordinary meaning of these words should control, which ultimately is more expansive than neglect, food, and shelter.  [R. 37 at 19.]

The Proper Care Exclusion is different from the Court's analysis for the Unauthorized Medication Exclusion because both sides have offered competing interpretations.  In these types of situations, reasonableness is a guidepost.  If the policy language is reasonably susceptible to more than one interpretation, the policy is considered ambiguous. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward*, 870 S.W.2d 223, 227 (Ky. 1994).  The Court, however, does not find the Plaintiff's proposed definition to be reasonable.  In support of their definition the Plaintiff argues that "proper care must mean that a horse is not neglected on basic equine needs . . . such as not fed or sheltered."  [R. 33-1 at 7.]  The Plaintiff fails to provide any support, and the Court cannot think of a reason, as to why this definition should control over the dictionary definition of "care."  Accordingly, the Court finds the dictionary definitions of the term must control.

NAS cites to Black's Law Dictionary's definition of "proper care" to mean "degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances."  [R. 36-1 at 25.]  Thus, the question is whether Dr. Wharton, in administering the "Black Shot," acted with the same degree of prudence and competence that a person engaged in the same activity would have exercised.  It is clear by both the testimony of Dr. Nieman, WinStar's managing resident veterinarian, and the settlement agreement entered between Dr. Wharton and Kentucky Board of Veterinary Examiners (KBVE) that Dr. Wharton did not act with proper care.  When asked whether Dr. Nieman would have given Laoban the "Black Shot," Dr. Nieman testified "It's not something I would use. . . . I don't give vitamins injections and iron."  [R. 36-1 at 24.]  Further, Dr. Wharton entered into a

7

Settlement Agreement with KBVE[1] where Dr. Wharton's veterinary license was suspended, and she was ordered to pay a fine. *Id.* Because the KBVE, which is composed primarily of Dr. Wharton's peers, imposed harsh penalties on Dr. Wharton, it follows that Dr. Wharton did not conform to the proper standard of care. The record clearly indicates that Dr. Wharton acted without proper care in administering the "Black Shot." The Proper Care Exclusion applies.

### III

NAS also argues that two misrepresentations in Cypress's application preclude coverage. [R. 36-1 at 16.] However, because the Court determines that coverage is precluded under both the Unauthorized Medication Exclusion and the Proper Care Exclusion, the Court need not address the remaining grounds of dismissal. Ultimately, the Court has determined that the Defendant has met their burden in showing that there is no genuine dispute as to a material fact.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion for Summary Judgment **[R. 36]** is **GRANTED**;

2. The Plaintiff's Motion for Summary Judgment **[R. 33]** is **DENIED**; and

3. The Court will enter an appropriate judgment contemporaneously herewith.

This the 10th day of September 2024.

---

[1] KBVE is comprised of ten board members including seven practicing veterinarians. KRS § 321.230. KBVE is charged with enforcing and regulating licensures, certifications, permits, and registrations. *Id.*

Gregory F. Van Tatenhove
United States District Judge